1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    VLAD MALENKO (USA) LLC,                    No.  2:24-cv-0121 DAD AC

12                 Plaintiff,

13         v.                                    FINDINGS AND RECOMMENDATIONS

14    DIANA SHVARTSMAN and MIRAGE
      FINE ART, a New Jersey Corporation.,
15
                 Defendants.
16

17

18         This matter is before the court on a motion for default judgment.  ECF No. 17.  The

19    motion was referred to the undersigned pursuant to E.D. Cal. R. 302(c)(19).  This motion was set

20    for hearing on the papers on October 30, 2024.  ECF No. 18.  Defendants have not appeared in

21    this case and have not opposed the motion.  For the reasons set forth below, the undersigned

22    recommends plaintiff's motion be GRANTED.

23                          **I.      Relevant Background**

24         Plaintiff is a California Company operating its principal place of business in the County of

25    Yuba, State of California.  ECF No. 1 at 2.  Defendant Mirage Fine Art ("MFA") is a Corporation

26    operating under the laws of the State of New Jersey, with its principal place of business in

27    Denville, New Jersey.  Id.  Defendant Diana Shvartsman is an owner, officer, director, or

28    employee of MFA.  Id.  According to the complaint, in or around November 2022, plaintiff and

                                            1

1   defendants reached an agreement whereby plaintiff would entrust and send merchandise (high-

2   quality certified jewelry and gemstones) to defendants, who would then sell the merchandise on

3   consignment.  Id. at 3.  The payment terms under agreement and each memorandum between

4   parties were thirty (30) days for diamonds and forty-five (45) days for other jewelry.  Id.  At all

5   times, the merchandise was plaintiff's property and should have been returned upon the plaintiff's

6   demand, until sold with plaintiff's approval and agreement.  Id.  Upon reaching the agreement, a

7   series of deliveries ensued, during which plaintiff provided defendants with a total of thirty-seven

8   (37) pieces of jewelry and gemstones valued at $148,197.95.  Id.

9          Beginning in January of 2023, plaintiff continuously requested that defendants pay for the

10   merchandise that had been delivered to and sold by them.  Id. at 4.  Despite being notified that the

11   merchandise has been sold in portions, plaintiff received only promises to pay in response to its

12   requests.  Id.  Eventually, defendants sent plaintiff a bundle of checks dated according to the

13   agreement between parties and memoranda.  Among the received checks was one dated February

14   6, 2023, in the amount of $32,094.00.  Id.  On February 9, 2023, plaintiff received a letter from its

15   bank stating that this money could not be deposited due to the insufficiency of funds in

16   defendants' bank account.  On February 9, 2023, plaintiff attempted to deposit another check in

17   the amount of $34,471.20.  Id.  On February 13, 2023, plaintiff's bank notified it that this check

18   also failed to clear due to the insufficiency of funds in defendant MFA's bank account.  Id.  The

19   same happened to a check for $21,000 dated March 24, 2023, which plaintiff's bank notified it on

20   April 20, 2023 could not be deposited.  Id.

21          Due to three failed operations, the bank blocked the plaintiff's account for 5 days.  ECF

22   No. 1 at 4.  Fearing that the bank would block the business bank account again, plaintiff did not

23   deposit the checks dated March 9, 24, 2023 and April 14, 2023, for $23,472.00, $21,000.00, and

24   $24,120.00, respectively.  Id.  On April 21, 2023, July 27, 2023, and August 16, 2023, defendants

25   made three payments by bank transfer to plaintiff totaling $8,000, however, since August 16,

26   2023, defendants ceased any attempt to pay for the merchandise and failed to respond to

27   plaintiff's inquiries regarding bounced checks due to insufficiency of funds on defendant MFA's

28   bank account.  Id.

1    Plaintiff attempted numerous times and in numerous ways to compel payment from

2    defendants, and received nothing but promises to pay.  Id. at 5.  On October 25, 2023, plaintiff,

3    through legal counsel, sent a written demand to defendants requesting them to pay $140,197.95 as

4    the full amount owed to plaintiff, or to return all merchandise no later than November 10, 2023.

5    Id.  However, neither Shvartsman nor MFA responded to the demand or refunded the balance

6    owed to plaintiff.  Id.  Plaintiff asserts that, as of the date the complaint was filed, defendants had

7    received 37 pieces of merchandise (including high-quality certified gemstones

8    and jewelry) and paid only $8,000.00.  Id.

9    Plaintiff filed this action on January 9, 2024, asserting the following causes of action: (1)

10   breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) conversion; (4)

11   civil theft (California Penal Code § 496); (5) fraud.  Id. at 1.  The Clerk of Court entered default

12   against both defendants on March 1, 2024.  ECF No. 11.  Plaintiff filed a first motion for default

13   judgment on May 14, 2024.  ECF No. 12.  That motion was denied without prejudice because it

14   was not properly served on defendants and because it did not contain adequate briefing.  ECF No.

15   15, 16.  Plaintiff filed a second motion for default judgment on September 18, 2024.  ECF No. 17.

16   That motion is now before the undersigned.

## II.    Motion

18   Plaintiff seeks default judgment in the amount of $445,811.65 for damages, attorneys'

19   fees, and costs.  ECF No. 17 at 2.  Defendants have not appeared or opposed the motion.

## III.   Analysis

21   A.    Legal Standard

22   Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party

23   against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend

24   against the action.  See Fed. R. Civ. P. 55(a).  However, "[a] defendant's default does not

25   automatically entitle the plaintiff to a court-ordered judgment."  PepsiCo, Inc. v. Cal. Sec. Cans,

26   238 F.Supp.2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th

27   Cir. 1986)); see Fed. R. Civ. P. 55(b) (governing the entry of default judgments).  Instead, the

28   decision to grant or deny an application for default judgment lies within the district court's sound

1  discretion.  Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).  In making this

2  determination, the court may consider the following factors:

3  
4  
5  
6
> the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

7  Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Default judgments are ordinarily

8  disfavored.  Id. at 1472.  Once default is entered, well-pleaded factual allegations in the operative

9  complaint are taken as true, except for those allegations relating to damages.  TeleVideo Sys., Inc.

10  v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin.

11  Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); see also Fair Housing of Marin v.

12  Combs, 285 F.3d 899, 906 (9th Cir. 2002).

13          Although well-pleaded allegations in the complaint are admitted by a defendant's failure

14  to respond, "necessary facts not contained in the pleadings, and claims which are legally

15  insufficient, are not established by default."  Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261,

16  1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord

17  DIRECTV, Inc. v. Huynh, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit

18  facts that are not well-pleaded or to admit conclusions of law") (citation and quotation marks

19  omitted); Abney v. Alameida, 334 F.Supp.2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment

20  may not be entered on a legally insufficient claim.").  A party's default conclusively establishes

21  that party's liability, although it does not establish the amount of damages.  Geddes, 559 F.2d at

22  560; cf. Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1414 (9th Cir. 1990) (stating in the

23  context of a default entered pursuant to Federal Rule of Civil Procedure 37 that the default

24  conclusively established the liability of the defaulting party).

25          B.      The Eitel Factors

26                  1.      Factor One: Possibility of Prejudice to Plaintiff

27          The first Eitel factor considers whether the plaintiff would suffer prejudice if default

28  judgment is not entered, and such potential prejudice to the plaintiff weighs in favor of granting a

1    default judgment.  See PepsiCo, Inc., 238 F.Supp.2d at 1177.  Here, plaintiff would suffer

2    prejudice if the court did not enter a default judgment because it would be without recourse for

3    recovery.  Accordingly, the first Eitel factor favors the entry of default judgment.

4                              2.    Factors Two and Three: Merits of Claims and Sufficiency of Complaint

5          The merits of plaintiff's substantive claims and the sufficiency of the complaint are

6    considered here together because of the relatedness of the two inquiries.  The court must consider

7    whether the allegations in the complaint are sufficient to state a claim that supports the relief

8    sought.  See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F.Supp.2d at 1175.  Here, the merits

9    of the claims and sufficiency of the complaint favor entry of default judgment.

10         Plaintiff's first claim is for breach of contract.  "To prevail on a cause for breach of

11   contract, the plaintiff must prove (1) the contract, (2) the plaintiff's performance of the contract or

12   excuse for nonperformance, (3) the defendant's breach, and (4) the resulting damage to the

13   plaintiff."  Richman v. Hartley, 224 Cal.App.4th 1182, 1186 (2014).  First, documents submitted

14   by plaintiff as exhibits to the complaint (ECF No. 8) show that the parties had a contract.  Second,

15   plaintiff performed the contract from its side, when plaintiff sent defendants the merchandise.

16   Third, defendants breached the contract by failing to perform; they were required to sell

17   merchandise on consignment or return the merchandise, but they either never sold the

18   merchandise, or failed to pay plaintiff for the sold merchandise, and never returned the

19   merchandise back to plaintiff, when plaintiff requested to send it back.  Plaintiff was financially

20   damaged by the loss of the merchandise without compensation.

21         Plaintiff also stated a claim of civil theft in violation of California Penal Code § 496.

22   California Penal Code § 496 provides in pertinent part that "[e]very person who buys or receives

23   any property that has been stolen or that has been obtained in any manner constituting theft or

24   extortion, knowing the property to be stolen or obtained, or who conceals, sells, withholds, or aids

25   in concealing, selling, or withholding any property from the owner, knowing the property to be

26   stolen or obtained, shall be punished by imprisonment in a county jail for not more than one year,

27   or imprisonment pursuant to subdivision (h) of Section 1170."  Cal. Pen. Code § 496(a).

28   "Although section 496 defines a criminal offense, it also provides an enhanced civil remedy in the

1   event there has been a violation of the statute—that is, where a person has knowingly received,

2   withheld or sold property that has been stolen or that has been obtained in any manner

3   constituting theft." Switzer v. Wood, 35 Cal. App. 5th 116, 119 (2019), as modified (May 10,

4   2019). "A criminal conviction is not a prerequisite to recovery of treble damages." Id. at 126.

5       Defendants' unlawful conduct falls within the scope of Penal Code § 496, as defendants

6   obtained merchandise from plaintiff through false pretenses, concealed it from plaintiff, and,

7   according to defendants' claims, sold at least a portion of the merchandise but never paid plaintiff

8   for it. Additionally, defendants withheld the remaining portion of the merchandise and failed to

9   return it despite plaintiff's demand. California Penal Code § 496(c) provides that "[a]ny person

10  injured by a violation of subdivision (a) or (b) of said section may bring an action for three times

11  the amount of actual damages sustained, plus costs of suit and reasonable attorney's fees." Based

12  on this section of the California Penal Code, plaintiff claims treble damages for the civil theft

13  committed by Defendants.

14      Having found that at least two of plaintiff's substantive claims are sufficiently alleged, the

15  undersigned concludes that this factor favors entry of default judgment.

16                  3.      Factor Four: The Sum of Money at Stake in the Action

17      Under the fourth Eitel factor, the court considers the amount of money at stake in relation

18  to the seriousness of defendant's conduct. Here, plaintiff seeks compensatory relief that is

19  proportionate to the seriousness of defendant's conduct, as amplified by the California statute

20  permitting treble damages. The amount at issue is proportionate to the seriousness of defendant's

21  conduct and this factor favors entry of default judgment.

22                  4.      Factor Five: Possibility of Dispute Concerning Material Facts

23      The facts of this case are relatively straightforward, and plaintiff has provided the court

24  with well-pleaded allegations supporting its claims. The court may assume the truth of well-

25  pleaded facts in the complaint (except as to damages) following the clerk's entry of default and,

26  thus, there is no likelihood that any genuine issue of material fact exists. See, e.g., Elektra Entm't

27  Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-

28  pleaded complaint are taken as true after the court clerk enters default judgment, there is no

6

1    likelihood that any genuine issue of material fact exists."); accord Philip Morris USA, Inc., 219

2    F.R.D. at 500; PepsiCo, Inc., 238 F.Supp.2d at 1177.  This factor favors entry of default

3    judgment.

4                    5.        Factor Six: Whether Default Was Due to Excusable Neglect

5            Upon review of the record before the court, there is no indication that the default was the

6    result of excusable neglect.  See PepsiCo, Inc., 238 F.Supp.2d at 1177.  Plaintiff served the

7    defendants with the summons and complaint.  ECF Nos. 6 and 7.  Moreover, plaintiff served

8    defendant by mail with notice of its application for default judgment.  ECF No. 19.  Despite

9    ample notice of this lawsuit and plaintiff's intention to seek a default judgment, defendants failed

10   to defend in this action.  Thus, the record supports a conclusion that the defendants have chosen

11   not to defend this action, and not that the default resulted from any excusable neglect.

12   Accordingly, this Eitel factor favors the entry of a default judgment.

13                   6.        Factor Seven: Policy Favoring Decisions on the Merits

14           "Cases should be decided upon their merits whenever reasonably possible."  Eitel, 782

15   F.2d at 1472.  However, district courts have concluded with regularity that this policy, standing

16   alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action.

17   PepsiCo, Inc., 238 F.Supp.2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694

18   F.Supp.2d 1039, 1061 (N.D. Cal. Mar. 5, 2010).  Accordingly, although the court is cognizant of

19   the policy favoring decisions on the merits – and consistent with existing policy would prefer that

20   this case be resolved on the merits – that policy does not, by itself, preclude the entry of default

21   judgment.

22                   7.        Conclusion: Propriety of Default Judgment

23           Upon consideration of all the Eitel factors, the court concludes that plaintiff is entitled to

24   the entry of default judgment against defendant.  What remains is the determination of the terms

25   of judgment.

26           C.        Terms of Judgment

27           Plaintiff is seeking no less than $420,593.85 in damages, $25,555.00 in attorney's fees,

28   and $716.80 as the cost of filing the lawsuit.  ECF No. 17-2 at 3.  The $420,539.85 represents

1   treble damages for civil theft under the California Penal Code § 496.  Plaintiff submitted a

2   declaration from Volodymyr Malenko, the owner of plaintiff Vlad Malenko (USA) LLC, stating

3   that the value of the merchandise sent to defendants is $148,197.95.  ECF No. 17-4 at 2.  Mr.

4   Malenko states that he "personally sent Defendants each set of the merchandise by parts reflected

5   in Memoranda attached to the Complaint. (ECF no.8, Exhibits A through G)." Id.  Mr. Malenko

6   goes on to state that he was not paid for any of the merchandise with the exception of $8,000.00.

7   Id. at 3.  The outstanding balance is therefore $140,197.95.  Trebled pursuant to Cal. Penal Code

8   § 496, plaintiff has established damages amounting to $420,593.95 in damages.

9          Plaintiff is also entitled to attorneys' fees and costs pursuant to California Penal Code

10  section 496(c).  Attorney fee awards are calculated using the "lodestar" method, whereby the

11  hours reasonably spent in the litigation are multiplied by a reasonable hourly rate.  Ferland v.

12  Conrad Credit Corp., 244 F.3d 1145, 1149 n.4 (9th Cir. 2001) (per curium).  The hourly rate is

13  generally calculated "according to the prevailing market rates in the relevant community." Blum

14  v. Stenson, 465 U.S. 886, 895 (1984).  It is the general rule that the court will use the rates of

15  attorneys practicing in the forum district.  Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir.

16  1992).  "In determining the appropriate lodestar amount, the district court may exclude from the

17  fee request any hours that are excessive, redundant, or otherwise unnecessary." Welch v. Metro.

18  Life Ins. Co., 480 F.3d 942, 946 (9th Cir. 2007)(internal citation omitted).

19         Plaintiff requests attorney fees at an hourly rate of $650 for 11.50 hours of work for

20  counsel J. Edward Brooks and $400.00 for 45.2 hours of work for associate counsel Aleksandra

21  Kostoreva for a total award of $25,555.00 in legal fees. ECF No. 17-2 at 4.  Counsel did not

22  provide itemized billing statements with time entries for either attorney.  A declaration provided

23  by Ms. Kostoreva states that she has been practicing law since 2022, and Mr. Brooks has been

24  practicing law for 17 years.  ECF No. 17-3 at 4.

25         "The fee applicant bears the burden of documenting the appropriate hours expended in the

26  litigation and must submit evidence in support of those hours worked." Welch, 480 F.3d at 948.

27  Here, counsel has not provided any substantiation for the request hours *or* the requested rates.

28  With respect to hours, the Ninth Circuit has approved reductions 20% of requested hours for

cases in which attorneys bill for unrelated tasks together, a practice known as "block billing."  Id.
Counsel in this case provided a block bill, warranting a 20% reduction.  In this case, however, the
problem of block billing is compounded by the fact that the requested hours of Ms. Kostoreva,
45.2, are wholly unreasonable for a factually straightforward case that exclusively involved a
motion for default judgment.  Similar cases generally require 10-25 hours of total attorney and
paralegal time.  See, e.g., BMO Harris Bank, N.A. v. Chahal Roadlines, Inc., No. 1:24-cv-0788
JLT-HBK, 2024 WL 5195924, at *2, 2024 U.S. Dist. LEXIS 232030 (E.D. Cal. Dec. 23,
2024)(awarding 10.5 hours of attorney work); Renova Energy Corp. v. Cuevas, No. 1:22-cv-
00999-JLT-EPG, 2024 WL 245116, at *8, 2024 U.S. Dist. LEXIS 12200  (E.D. Cal. Jan. 23,
2024), report and recommendation adopted, No. 1:22-cv-00999-JLT-EPG, 2024 WL 524448,
2024 U.S. Dist. LEXIS 23291 (E.D. Cal. Feb. 9, 2024)(awarding 25.9 hours of attorney time);
Block v. Alzamzami, No. 1:23-cv-00061-JLT-SKO, 2024 WL 664463, at *6, 2024 U.S. Dist.
LEXIS 27518 (E.D. Cal. Feb. 16, 2024), report and recommendation adopted, No. 1:23-CV-0061
JLT SKO, 2024 WL 1095918, 2023 U.S. Dist. LEXIS 46486 (E.D. Cal. Mar. 13, 2024)
(awarding 8.3 hours of attorney time).

Because only block bills were presented and because the hours requested are
unreasonable, the requested hours are reduced as follows: 9.2 hours attributed to Mr. Brooks (a
20% reduction from his request) and 13.56 hours for Ms. Kostoreva (a 70% reduction from her
request).  The court finds these reductions reasonable given the absence of support in counsel's
requests, the straightforward nature of this case, and the exaggerated nature of the requests,
particularly the 45.2 hours requested by Ms. Kostoreva.

The court further finds counsel's requested rates unreasonable for the local market.
Following recent orders in similar cases in this district, the court reduces Mr.  Brooks' awarded
rate to $500 per hour and Ms. Kostoreva's rate to $200 per hour.  M&T Cap. & Leasing Corp. v.
Northpoint Transportation Inc., No. 2:23-cv-00656-JAM-CKD, 2024 WL 1795391, at *3, 2024
U.S. Dist. LEXIS 75816 (E.D. Cal. Apr. 25, 2024), report and recommendation adopted, No.
2:23-CV-00656-JAM-CKD, 2024 WL 2411263, 2024 U.S. Dist. LEXIS 92681 (E.D. Cal. May
23, 2024), citing Seebach v. BMW of N. Am., LLC, 2020 WL 4923664 at *3, 2020 U.S. Dist.

1    LEXIS 152330 (E.D. Cal. Aug. 21, 2020) (awarding the hourly rates of $200 for an attorney who

2    had been admitted to practice less than two years, and $505 for an attorney "with roughly 20

3    years of experience" in 2020).  Accordingly, the undersigned finds the appropriate attorneys fee

4    award to be $7,312.00 ((9.2 x 500 = 4,600) + (13.56 x 200 = 2,712) = $7,312.00).

5            Finally, plaintiff requests an award of costs in the amount of $716.80, inclusive of a filing

6    fee $405 and $311.80 for Service of Process of Summons and Service of Complaint on

7    Defendants by Nationwide Legal.  The court finds this amount appropriate.

8                                **IV.    Conclusion**

9            It is RECOMMENDED THAT:

10           1.  Plaintiff's motion for default judgment (ECF No. 17) be GRANTED;

11           2.  Plaintiff be awarded $420,593.95 in damages, $7,312.00 in attorneys fees, and $716.80

12   in costs for a total award of $428,622.75.

13           3.  Judgement be entered for plaintiff and this case closed.

14           These findings and recommendations are submitted to the United States District Judge

15   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one days

16   after being served with these findings and recommendations, any party may file written

17   objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a

18   document should be captioned "Objections to Magistrate Judge's Findings and

19   Recommendations."  Any response to the objections shall be filed with the court and served on all

20   parties within fourteen days after service of the objections.  Local Rule 304(d).  Failure to file

21   objections within the specified time may waive the right to appeal the District Court's order.

22   Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57

23   (9th Cir. 1991).

24   DATED: January 17, 2025

25                                        _____

26                                        ALLISON CLAIRE
                                         UNITED STATES MAGISTRATE JUDGE

27

28

                                             10